EXHIBIT
3

United States Code Annotated
Title 34. Crime Control and Law Enforcement (Refs & Annos)
Subtitle VI. Other Crime Control and Law Enforcement Matters (Refs & Annos)
Chapter 605. Recidivism Prevention
Subchapter II. Enhanced Drug Treatment and Mentoring Grant Programs
Part C. Administration of Justice Reforms
Subpart 1. Improving Federal Offender Reentry

34 U.S.C.A. § 60541
Formerly cited as 42 USCA § 17541

§ 60541. Federal prisoner reentry initiative

Effective: September 1, 2017
Currentness

(a) In general

The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:

(1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons--

(A) assess each prisoner's skill level (including academic, vocational, health, cognitive, interpersonal, daily living, and related reentry skills) at the beginning of the term of imprisonment of that prisoner to identify any areas in need of improvement prior to reentry;

(B) generate a skills development plan for each prisoner to monitor skills enhancement and reentry readiness throughout incarceration;

(C) determine program assignments for prisoners based on the areas of need identified through the assessment described in subparagraph (A);

(D) ensure that priority is given to the reentry needs of high-risk populations, such as sex offenders, career criminals, and prisoners with mental health problems;

(E) coordinate and collaborate with other Federal agencies and with State, Tribal, and local criminal justice agencies, community-based organizations, and faith-based organizations to help effectuate a seamless reintegration of prisoners into communities;

(F) collect information about a prisoner's family relationships, parental responsibilities, and contacts with children to help prisoners maintain important familial relationships and support systems during incarceration and after release from custody; and

(G) provide incentives for prisoner participation in skills development programs.

(2) Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include--

(A) the maximum allowable period in a community confinement facility; and

(B) such other incentives as the Director considers appropriate (not including a reduction of the term of imprisonment).

**(b) Identification and release assistance for Federal prisoners**

**(1) Obtaining identification**

The Director shall assist prisoners in obtaining identification (including a social security card, driver's license or other official photo identification, or birth certificate) prior to release.

**(2) Assistance developing release plan**

At the request of a direct-release prisoner, a representative of the United States Probation System shall, prior to the release of that prisoner, help that prisoner develop a release plan.

**(3) Direct-release prisoner defined**

In this section, the term "direct-release prisoner" means a prisoner who is scheduled for release and will not be placed in prerelease custody.

**(c) Improved reentry procedures for Federal prisoners**

The Attorney General shall take such steps as are necessary to modify the procedures and policies of the Department of Justice with respect to the transition of offenders from the custody of the Bureau of Prisons to the community--

(1) to enhance case planning and implementation of reentry programs, policies, and guidelines;

(2) to improve such transition to the community, including placement of such individuals in community corrections facilities; and

(3) to foster the development of collaborative partnerships with stakeholders at the national, State, and local levels to facilitate the exchange of information and the development of resources to enhance opportunities for successful offender reentry.

**(d) Duties of the Bureau of Prisons**

**(1) Omitted**

**(2) Measuring the removal of obstacles to reentry**

**(A) Coding required**

The Director shall ensure that each institution within the Bureau of Prisons codes the reentry needs and deficits of prisoners, as identified by an assessment tool that is used to produce an individualized skills development plan for each inmate.

**(B) Tracking**

In carrying out this paragraph, the Director shall quantitatively track the progress in responding to the reentry needs and deficits of individual inmates.

**(C) Annual report**

On an annual basis, the Director shall prepare and submit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report that documents the progress of the Bureau of Prisons in responding to the reentry needs and deficits of inmates.

**(D) Evaluation**

The Director shall ensure that--

(i) the performance of each institution within the Bureau of Prisons in enhancing skills and resources to assist in reentry is measured and evaluated using recognized measurements; and

(ii) plans for corrective action are developed and implemented as necessary.

**(3) Measuring and improving recidivism outcomes**

**(A) Annual report required**

**(i) In general**

At the end of each fiscal year, the Director shall submit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report containing statistics demonstrating the relative reduction in recidivism for inmates released by the Bureau of Prisons within that fiscal year and the 2 prior fiscal years, comparing inmates who participated in major inmate programs (including residential drug treatment, vocational training, and prison industries) with inmates who did not participate in such programs. Such statistics shall be compiled separately for each such fiscal year.

**(ii) Scope**

A report under this paragraph is not required to include statistics for a fiscal year that begins before April 9, 2008.

**(B) Measure used**

In preparing the reports required by subparagraph (A), the Director shall, in consultation with the Director of the Bureau of Justice Statistics, select a measure for recidivism (such as rearrest, reincarceration, or any other valid, evidence-based measure) that the Director considers appropriate and that is consistent with the research undertaken by the Bureau of Justice Statistics under section 60551(b)(6) of this title.

**(C) Goals**

**(i) In general**

After the Director submits the first report required by subparagraph (A), the Director shall establish goals for reductions in recidivism rates and shall work to attain those goals.

**(ii) Contents**

The goals established under clause (i) shall use the relative reductions in recidivism measured for the fiscal year covered by the first report required by subparagraph (A) as a baseline rate, and shall include--

**(I)** a 5-year goal to increase, at a minimum, the baseline relative reduction rate of recidivism by 2 percent; and

**(II)** a 10-year goal to increase, at a minimum, the baseline relative reduction rate of recidivism by 5 percent within 10 fiscal years.

**(4) Format**

Any written information that the Bureau of Prisons provides to inmates for reentry planning purposes shall use common terminology and language.

(5) Medical care

The Bureau of Prisons shall provide the United States Probation and Pretrial Services System with relevant information on the medical care needs and the mental health treatment needs of inmates scheduled for release from custody. The United States Probation and Pretrial Services System shall take this information into account when developing supervision plans in an effort to address the medical care and mental health care needs of such individuals. The Bureau of Prisons shall provide inmates with a sufficient amount of all necessary medications (which will normally consist of, at a minimum, a 2-week supply of such medications) upon release from custody.

**(e) Encouragement of employment of former prisoners**

The Attorney General, in consultation with the Secretary of Labor, shall take such steps as are necessary to educate employers and the one-stop partners and one-stop operators (as such terms are defined in section 3102 of Title 29) that provide services at any center operated under a one-stop delivery system established under section 3151(e) of Title 29 regarding incentives (including the Federal bonding program of the Department of Labor and tax credits) for hiring former Federal, State, or local prisoners.

**(f) Omitted**

**(g) Elderly and family reunification for certain nonviolent offenders pilot program**

**(1) Program authorized**

**(A) In general**

The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.

**(B) Placement in home detention**

In carrying out a pilot program as described in subparagraph (A), the Attorney General may release some or all eligible elderly offenders from the Bureau of Prisons facility to home detention.

**(C) Waiver**

The Attorney General is authorized to waive the requirements of section 3624 of Title 18 as necessary to provide for the release of some or all eligible elderly offenders from the Bureau of Prisons facility to home detention for the purposes of the pilot program under this subsection.

**(2) Violation of terms of home detention**

A violation by an eligible elderly offender of the terms of home detention (including the commission of another Federal, State, or local crime) shall result in the removal of that offender from home detention and the return of that offender to the designated Bureau of Prisons institution in which that offender was imprisoned immediately before placement on home detention under paragraph (1), or to another appropriate Bureau of Prisons institution, as determined by the Bureau of Prisons.

**(3) Scope of pilot program**

A pilot program under paragraph (1) shall be conducted through at least one Bureau of Prisons facility designated by the Attorney General as appropriate for the pilot program and shall be carried out during fiscal years 2009 and 2010.

**(4) Implementation and evaluation**

The Attorney General shall monitor and evaluate each eligible elderly offender placed on home detention under this section, and shall report to Congress concerning the experience with the program at the end of the period described in paragraph (3). The Administrative Office of the United States Courts and the United States probation offices shall provide such assistance and carry out such functions as the Attorney General may request in monitoring, supervising, providing services to, and evaluating eligible elderly offenders released to home detention under this section.

**(5) Definitions**

In this section:

**(A) Eligible elderly offender**

The term "eligible elderly offender" means an offender in the custody of the Bureau of Prisons--

(i) who is not less than 65 years of age;

(ii) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 20911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced;

(iii) who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii);

(iv) who has not been determined by the Bureau of Prisons, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in clause (ii);

(v) who has not escaped, or attempted to escape, from a Bureau of Prisons institution;

(vi) with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and

(vii) who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

**(B) Home detention**

The term "home detention" has the same meaning given the term in the Federal Sentencing Guidelines as of April 9, 2008, and includes detention in a nursing home or other residential long-term care facility.

**(C) Term of imprisonment**

The term "term of imprisonment" includes multiple terms of imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment for purposes of this section.

**(h) Federal Remote Satellite Tracking and Reentry Training program**

**(1) Establishment of program**

The Director of the Administrative Office of the United States Courts, in consultation with the Attorney General, may establish the Federal Remote Satellite Tracking and Reentry Training (ReStart) program to promote the effective reentry into the community of high risk individuals.

**(2) High risk individuals**

For purposes of this section, the term "high risk individual" means--

(A) an individual who is under supervised release, with respect to a Federal offense, and who has previously violated the terms of a release granted such individual following a term of imprisonment; or

(B) an individual convicted of a Federal offense who is at a high risk for recidivism, as determined by the Director of the Bureau of Prisons, and who is eligible for early release pursuant to voluntary participation in a program of residential substance abuse treatment under section 3621(c) of Title 18 or a program described in this section.

**(3) Program elements**

The program authorized under paragraph (1) shall include, with respect to high risk individuals participating in such program, the following core elements:

(A) A system of graduated levels of supervision, that uses, as appropriate and indicated--

(i) satellite tracking, global positioning, remote satellite, and other tracking or monitoring technologies to monitor and supervise such individuals in the community; and

(ii) community corrections facilities and home confinement.

(B) Substance abuse treatment and aftercare related to such treatment, mental and medical health treatment and aftercare related to such treatment, vocational and educational training, life skills instruction, conflict resolution skills training, batterer intervention programs, and other programs to promote effective reentry into the community as appropriate.

(C) Involvement of the family of such an individual, a victim advocate, and the victim of the offense committed by such an individual, if such involvement is safe for such victim (especially in a domestic violence case).

(D) A methodology, including outcome measures, to evaluate the program.

(E) Notification to the victim of the offense committed by such an individual of the status and nature of such an individual's reentry plan.

**(i) Authorization for appropriations for Bureau of Prisons**

There are authorized to be appropriated to the Attorney General to carry out this section, $5,000,000 for each of fiscal years 2009 and 2010.

**CREDIT(S)**

(Pub.L. 110-199, Title II, § 231, Apr. 9, 2008, 122 Stat. 683; Pub.L. 113-128, Title V, § 512(bb)(2), July 22, 2014, 128 Stat. 1717.)

34 U.S.C.A. § 60541, 34 USCA § 60541
Current through P.L. 115-140.


© 2018 Thomson Reuters. No claim to original U.S. Government Works.